The plaintiff contends that the action is to recover damages to a load of livestock, shipped by it from East St. Louis, Ill., to Rockingham, N.C. When the shipment left East St. Louis, the animals were all in sound health and good condition, but when they arrived at Rockingham many of the animals were in a sick and dying condition — gaunted — not fed or watered — in bad shape — bunged up. One died on the same day the shipment arrived in Rockingham within three hours after the delivery of the shipment by the Seaboard, three died the next day and another 8 or 10 days later. The shipment, consisting of 20 mules and 6 horses, was received by the defendant the L. N. Railroad Co., at East St. Louis, Ill., in the afternoon of 12 December, 1922, at 3:30 or 4 o'clock, and was delivered at destination at Rockingham, N.C. at 6:46 o'clock a. m., on 17 December, 1922, having traveled about 1,000 miles and having been handled by the following lines of railroad: L. N. to Nashville, N.C. St. L. to Atlanta and defendant Seaboard to destination. In addition to the sick and dying condition of a number of the animals, the tails and manes of some of the horses were gone. The post-mortem examination of one of the dead animals disclosed that it was bruised on the inside. The usual and customary time for a shipment to take between St. Louis and Rockingham is about 80 hours.
The plaintiff alleged and offered evidence to prove that the sickness, damaged condition, injuries and death of the animals were the result of negligence of the defendants.
The plaintiff offered a number of witnesses in substantiation of its allegations, and showed that the stock was unloaded in the stock pen of the Seaboard at Monroe, N.C. at a time when it was raining and sleeting, and that the pen at Monroe was an uncovered pen, built of 2x8 boards, nailed to posts, and that this pen was in a muddy condition. The defendants did not offer any evidence.
The defendants contended that there was no evidence as to the nature or character of the sickness, except that one witness stated the animals had "colds." That the veterinary surgeon employed by plaintiff to treat the animals and conducted the postmortem over one was called and sworn by plaintiff, but never put on the stand.
The defendants concede that the animals were in good condition when received by the L. N. Railroad Co., at East St. Louis, but allege "That *Page 65 
when said shipment of livestock was delivered to the plaintiff that certain of the animals were sick with influenza, pneumonia and hemorrhagic septicaemia, natural diseases to which livestock are subject, and which was in no way due to any negligence or carelessness on the part of this defendant, and over which it had no control. . . . That any damage or injury done to or sustained by the said livestock was not the result of any carelessness or negligence on the part of this defendant, but was the result of and was directly due to natural causes, to wit, sickness and disease such as influenza, pneumonia and hemorrhagic septicaemia, which this defendant could not prevent, and which it could not control, and against which it did not insure."
The following issues were submitted to the jury:
"1. Was plaintiff's stock injured by the negligence of the Seaboard Air Line Railway Co., as alleged in the complaint? Answer: `Yes.'
"2. Was plaintiff's stock injured by the negligence of the Louisville 
Nashville Railroad Company, as alleged in the complaint? Answer: `No.'
"3. Is the defendant, Louisville Nashville Railroad Company liable to plaintiff for injury to its stock as the initial carrier as alleged in the complaint? Answer: `Yes.'
"4. What damages, if any, is plaintiff entitled to recover of the defendants? Answer: `$1,500.'"
Numerous exceptions and assignments of error were made. The material ones will be considered in the opinion. Judgment was rendered for plaintiff against defendant Seaboard Air Line Railway Co., and also against L. N. Railroad Co., as follows:
"The judgment hereby rendered in favor of plaintiff as against the Louisville and Nashville Railroad Company is not rendered on account of any negligence on the part of said Louisville and Nashville Railroad Company in connection with its handling of the plaintiff's stock, but solely under and on account of the provisions of the Federal statute making the initial carrier liable for any damage sustained through the negligence of any of the participating carriers."
From judgment rendered defendants excepted, assigned error and appealed to the Supreme Court.
The first contention of defendants is: "The motion for nonsuit and the prayer for a directed verdict should have been granted. So far as we have been able to find, this is a case of first *Page 66 
impression in this State. It has been held in many cases that proof of receipt by a carrier in good condition, and delivery in a damaged condition furnished sufficient proof to call upon the carrier to go forward with the evidence. An examination of these cases, however, will disclose that the injuries invariably consisted of broken bones, cuts, wounds, or other manifest and physical injuries. No such question is presented on this record. We have been unable to find any case where mere proof of sickness from a natural disease to which livestock is subject has been held sufficient to take the case to the jury on the issue of negligence." The evidence of the plaintiff showed that the animals when shipped from St. Louis "All were in good shape when they were loaded on the car. . . . An inspection was made of the mules by a veterinary before they were loaded." The same witness who saw them loaded saw them unloaded at Rockingham. "They were in bad shape. . . . they were all gaunted and looked like they had not been fed or watered." The animals were fed and watered at Monroe. The pen at Monroe "is an open shute and has a fence built around it of about 2x8 boards nailed to posts and it is not covered and it is muddy." When the animals were unloaded at Rockingham "the weather was cold and raining and sleeting." It was in evidence that every care and treatment was given by plaintiff at Rockingham to the sick animals when it received them from the Seaboard. One of plaintiff's witnesses, who testified he had been in the stock business and was a "horse nurse" and had 35 or 40 years experience around barns, described the animals "all pretty sick and had colds and were all bunged up and some nearly dead and others dying."
A motion for judgment as in a case of nonsuit the evidence is to be taken in the light most favorable to plaintiff, and he is entitled to the benefit of every reasonable intendment upon the evidence and every reasonable inference to be drawn therefrom. This is the well settled rule in this jurisdiction. The court below was correct in refusing to nonsuit plaintiff.
At the request of defendant, the court below gave the following instruction, but added the words "and diseases": "The rule as to livestock is that if they were shipped in good condition, but upon reaching destination have bruises, cuts, wounds, broken bones and other injuries (and diseases) such as are not the ordinary and usual result of transportation, then proof of such condition is sufficient to take the case to the jury and to support a verdict for the plaintiff if the jury should find the ultimate issue of negligence in favor of the plaintiff. But even where there are wounds, broken bones or other manifest injuries, the jury is not on that account to say necessarily that such injuries resulted from the negligence of the railroad. It is simply evidence from which the jury may or may not infer the ultimate fact of negligence." *Page 67 
In Davis Livestock Co. v. Davis, 188 N.C. p. 221, it is said: "The defendant admitted the contract of carriage, the receipt of the stock, and the death of one of the mules while in its possession. In these circumstances the loss is presumed to have been attributable to the defendant's negligence. Everett v. R. R., 138 N.C. 68; Hosiery Co. v.Express Co., 184 N.C. 478."
We think the addition of "and diseases," added by the learned judge who tried this case, was not prejudicial when read in the light of the entire charge. We think this controversy, from all the facts appearing of record, embodied in one of defendants' prayers and also given in the charge of the court, is as favorable to the defendants as it is entitled to. The charge prayed for and given is as follows: "The court charges you, that in this case the railroad companies are responsible only for such sickness, whether resulting in death or not, as was due to the carelessness and negligence of the defendants or one of them, or unless such negligence materially contributed thereto. A railroad company is not liable for colds, pneumonia, influenza or other natural diseases which are contracted by animals before or during the course of transportation and which were in no way due to any negligence on the part of the railroad company. If, notwithstanding all due and reasonable care exercised by the railroad while the animals were being transported, some of the animals developed colds, pneumonia, influenza, or other natural disease, so that the animals sickened or died therefrom, then and in that event the railroad company would not be responsible in damages on account of such sickness and death." And further charged: "Now the court instructs you if you find from the greater weight of the testimony that upon the arrival of the stock they were in a damaged condition and that such damaged condition was not due to natural causes or from the innate or vicious nature of the animals, then the court instructs you, if you find that to be true, that would be evidence against the Seaboard from which the jury might find, or they might not find, that such condition of the stock was due to the negligence of the Seaboard. The rule being, gentlemen, when stock in a damaged condition, not caused by natural causes or by the innate or vicious nature of the stock, is found in the possession of the carrier, the presumption is that the carrier in whose possession the stock was found was responsible for any injury. And that means not that the burden is shifted from plaintiff to the railroad company, but simply that the fact of finding the stock in a damaged condition in possession of the carrier and if it is not due to natural causes or to the innate or vicious character of the animals is evidence to go to the jury from which the jury may infer that the damaged condition of the stock was due to the negligence of the carrier in whose possession it is found. Now, the rule *Page 68 
applies if you find that the stock were found in a damaged condition when received here and that such damaged condition was not due to natural causes or to the innate or vicious nature of the animals, then that would be evidence from which the jury might infer and find that the stock was damaged while in the possession of the Seaboard, but that is no evidence against the Louisville Nashville because that only applies to the carrier in whose possession the stock was found."
On the question of damage the court charged as follows: "The fourth issue is: What damages, if any, is plaintiff entitled to recover of the defendant? The burden is upon the plaintiff to show by the greater weight of the testimony what damages it is entitled to recover. And as I have heretofore explained, the plaintiff would be entitled to recover only such damages as it has shown was caused by the negligence of the defendant and was not caused by natural causes and not caused by the innate and vicious nature of the animals, but only such damages as the plaintiff has shown by the greater weight of the testimony was caused by the negligence of the defendant, Seaboard. On the issue of damages, the measure of damages is the difference between the market value of the animals, the reasonable market value, when they arrived at Rockingham and what the reasonable market value would have been had it not been for the negligence of the defendant."
The court gave defendant's prayer for instruction on damages, as follows: "If you find from the evidence that a part of the sickness and death was due to natural causes over which the defendants had no control, and that another part was due to negligence on the part of the defendants or one of them, then you can return a verdict for only such part of the damages as you find was due to or caused by the negligence of the defendants or one of them. In considering the question of damages, you have the right to consider the estimates of damage given by the witnesses, but you do not have to adopt such estimates as your own. You should consider all the surrounding facts, circumstances and conditions found by you to be true, and after doing this, return a verdict for such sum of money, if any, as you find was the value of the damage due to the negligence of the defendants or one of them." We think the charge as favorable as defendants would be entitled to.
The defendant excepted and assigned error to the following questions and answers:
"I was present here at Rockingham when the shipment was delivered here. The weather was cold and raining and sleeting when they were delivered here at Rockingham.
"Q. What was the condition of the animals at that time? Answer: `They were in bad shape.' *Page 69 
"Q. Give us in detail the condition of each animal. Answer: `They were all gaunted and looked like they had not been fed and watered.'"
These questions were asked the witness P. C. Coley, a dealer in livestock, a man experienced in his business, connected with plaintiff's livestock corporation. He saw the animals when they were shipped, saw them loaded on the car at East St. Louis, saw they were in good shape then, was present at Rockingham when the animals were unloaded. The witness by personal observation knew all about the condition of the animals before they were loaded and when they were unloaded. The witness had personal knowledge and was experienced in his line of business, and we think the evidence admissible. Renn v. R. R., 170 N.C. p. 128.
"The instantaneous conclusions of the mind as to the appearance, condition, or mental or physical state of persons, animals, and things, derived from observation of a variety of facts presented to the senses at one and the same time, are, legally speaking, matters of fact, and are admissible in evidence." McKelvey on Evidence (2d Ed.) p. 220.
We think the court below charged the law on the facts. The evidence was sufficient and competent to base the charge. The court carefully charged in regard to "sickness from a natural disease." The rule of damages was in accordance with law under the facts and circumstances as appear from the record. The court below gave the contentions fairly and a most painstaking and careful charge. The remaining exceptions and assignments of error present no questions not heretofore settled by our decisions and we do not think material or prejudicial.
We can discover on the record
No error.