## J. C. FULLER v. VIRGINIA & CAROLINA SOUTHERN RAILROAD COMPANY.

(Filed 4 January, 1939.)

**1. Carriers § 10—Evidence held sufficient to overrule nonsuit in action to recover for injury to mules in transit.**

Evidence tending to show that mules were delivered to a carrier in sound, healthy condition from sanitary pens and lots free from disease, that there was undue delay in feeding and watering the animals in transit, that the carrier did not give the animals the period of rest which it contracted to allow them, and that the animals arrived in a diseased condition, with expert testimony that the disease from which they were suffering was such as might be caused, or caused to develop actively by treatment similar to that given the animals, is sufficient to shift the burden of going forward with the evidence to defendant carrier and take the case to the jury, and judgment of nonsuit entered at the close of plaintiff's evidence is error.

**2. Same—Presumption of negligence from delivery of goods in damaged condition applies to livestock with modification.**

The general rule that delivery of goods by a carrier in a damaged condition raises a rebuttable presumption of negligence on the part of the carrier is applicable to shipments of livestock with the modification that the carrier is not presumptively liable for injuries growing out of the natural propensities and innate viciousness of the animals in the absence of proof of negligence, and such presumption, being sufficient in itself to take the case to the jury, shifts the burden of going forward with the evidence upon the carrier.

**3. Evidence § 6—**

The shifting of the burden of going forward with the evidence upon plaintiff's making out a *prima facie* case is not a shift in the burden of proof, but merely subjects defendant to the risk of nonpersuasion.

APPEAL by plaintiff from *Spears, J.,* at February Term, 1938, of ROBESON. Reversed.

This is a civil action to recover damages for the death of ten mules, and disease to others, alleged to have been caused by the negligence of the carrier. The action was brought under the Carmack Act (U. S. C. A., Tit. 49, sec. 20, par. 11), making the delivering carrier answerable for damages to property in transit. It was admitted that the mules were shipped from National Stockyards, Illinois, to Atlanta for feeding and watering, then were reloaded and shipped to Lumberton, North Carolina. There were two carloads of twenty-four mules each.

Plaintiff's evidence tended to show that all the mules were free from disease and in good condition when delivered to the railroad at National Stockyards, Illinois. It was testified as to the condition of the mules

in both shipments: "Those 48 mules . . . were all in sound and good health and in fine shape. You would not see any two carloads of mules that would leave St. Louis in better condition when they left. . . . Health and soundness was absolutely good without any defects or anything in them." The barns and pens, from which they were shipped about the middle of August, 1936, were in good sanitary condition and there was no sickness among the animals there at the time or immediately preceding the time of shipment. "There was no disease of any kind prevalent at the horse and mule barns at that time, our barns were in fine shape. The health condition at that time was good. We had no sick mules of any kind at that time. . . ." The assistant state verterinarian for Illinois testified: "During the period from the first of July, 1936, to the first of October, 1936, including the month of August, we had no contagious or infectious diseases at the barns at the stockyards. I saw these 48 mules in the barns of Mr. Sparks there before they were shipped, I just saw them in the pens and as far as I could tell, they all looked in good physical condition." The mules were bought individually at National Stockyards, but were shipped in the two cars over the same route, were unloaded for food and water at the same point, and had the same disease at the end of the journey. Plaintiff's barns, where the mules were finally unloaded, were in excellent sanitary condition, and the evidence tended to show that no disease was contracted there. Plaintiff testified: "Before these mules arrived we scrubbed out the troughs, swept down the walls, disinfected with creso-dip. We did that before we got in either carload. We scrubbed the troughs out and turned them over and left them for a few days to dry, and before I put water in them we disinfected them and washed them out with clear water after they dried. We did that before we give them water out of the trough." There was much evidence of a similar character as to the care given these mules upon arrival. The mules were sick when they arrived and the condition grew worse. The mules in the first carload appeared "droopy and tired," "jaded," and "didn't eat" when they arrived. Next morning they were in "bad condition," "looked sick," and the following morning two died. They were very sick when the veterinarian arrived that day. On the same day the second car arrived; in that car one was already sick and another nervous and wild. The sick one died that night and the nervous one two days later. Ten mules died within two days after the arrival of the second car, three from the first carload and seven from the second. Although a waiver of feeding and watering for 36 hours, as permitted by law, was signed by plaintiff, the first carload had no food or water for 43½ hours before reaching Atlanta; also, carriers disregarded the agreement to allow the mules an extra 24 hours for rest, feed, and watering at Atlanta. The

disease affecting the mules was hemorrhagic septicaemia, or generalized blood poisoning, with secondary enteritis, or inflammation of the small intestines. Septicaemia, it appears, may be contracted from infected quarters, feed racks and watering troughs, and long periods without food and water may cause an active case to develop. A qualified expert testified: "If the germ of septicaemia is in the animal and that animal is transported from St. Louis to Lumberton, say twelve to fifteen hundred miles in crowded cars, twenty-four to the car, and necessarily requiring that they remain on the cars for a considerable distance, and if this lowers the resistance of the animal and the germ is in him, that would cause the germ to become active. In this particular type we were dealing with a very virulent type, like a mass infection." Among the causes of enteritis given were "changes of feed, lowered resistance and changes of feed, improper feeding, that is, omissions of feed and water. . . ."

At the close of plaintiff's evidence motion for judgment of nonsuit was made and allowed. From judgment dismissing the action, plaintiff appealed.

*D. H. Fuller and McKinnon, Nance & Seawell for plaintiff.*
*McLean & Stacy for defendant.*

DEVIN, J. A single determinative question is presented: Was the evidence offered sufficient to take the case to the jury as to the negligence of the railroad in the transportation of the mules in question? This question must be answered in the affirmative.

The pertinent evidence is summarized briefly above. Evidence that the mules were delivered to the carrier in sound, healthy condition from sanitary pens and from lots which were free from disease, that there was undue delay in feeding and watering the animals in transit, that the carrier did not give the animals the period of rest which it contracted to allow them, and that the animals arrived in a diseased condition, such a disease being one which may be caused, or cause to develop actively, by treatment similar to that given the animals in question, is sufficient to shift—not the burden of proof—but the burden of going forward (the risk of nonpersuasion) to the defendant. In *Edgerton v. R. R.,* 203 N. C., 281, 283, and in *Farming Co. v. R. R.,* 189 N. C., 63, 67, the following charge was approved: "The rule being that when stock in a damaged condition, not caused by natural causes, or by the innate or vicious nature of the stock, is found in the possession of the carrier, the presumption is that the carrier in whose possession the stock is found in such damaged condition, and not due to the natural causes or innate viciousness of the stock, is responsible for the injury sustained. That

is, not the burden is shifted from plaintiff to the defendant, but the finding of the stock in the damaged condition, not due to natural causes or innate viciousness of the animals, if found in the possession of the carrier, is enough evidence to go to the jury, from which evidence the jury may or may not find by the greater weight of evidence that the damage to the stock was caused by the negligence of the carrier in whose possession it is found." To the same effect see *Hinkle v. R. R.,* 126 N. C., 932. We think this rule is equally applicable to stock delivered in a sickened and diseased condition, where the evidence tends to show that the treatment accorded the animals is such, in the opinion of experts, to produce the diseased condition actually found in the animals. *Farming Co. v. R. R., supra.* Plaintiff's evidence in the instant case goes further than the requirements of this rule. Here a qualified expert, upon a hypothetical question, gave it as his opinion that the mules contracted the disease after leaving St. Louis while en route to Lumberton in the custody and possession of the carriers. In *Farming Co. v. R. R., supra,* 67, where the facts were similar to those in the instant case, the following charge was approved; "The railroad companies are responsible only for such sickness, whether resulting in death or not, as was due to the carelessness and negligence of the defendants or one of them, or unless such negligence materially contributed thereto." There, it was likewise pointed out, when there is no dispute as to the contract of carriage, receipt of the stock, and death of the stock, "the loss is presumed to have been attributable to the defendant's negligence. *Everett v. R. R.,* 138 N. C., 68; *Hosiery Co. v. Express Co.,* 184 N. C., 478." *Farming Co. v. R. R., supra,* at p. 67, quoting from *Livestock Co. v. Davis,* 188 N. C., at p. 221. As stated by Elliott (Railroads, 3rd Ed., Vol. 4, p. 832), ". . . the prevailing rule . . . is that when the animals are shown to have been delivered to the carrier in good condition, and to have been lost or injured on the way, the burden of proof then rests upon the carrier to show that the loss or injury was not caused by its own negligence." The English rule, as stated by Hutchinson (Carriers, 3rd Ed., Vol. 1, p. 347), is that "the carriers of live animals incur the responsibilities of common carriers (insurer) as to such freight; but that, at the same time, where an injury has happened to them, it is competent for the carrier to show that it occurred through the 'proper vice' of the animal and not from any negligence on his part." The same author adds, "And in this country, with greater unanimity, the duty and liability of the common carrier as to such freight have been defined with exactly the same limitations."

The general rule as to goods damaged in transit is that such damage is presumed to have resulted from the carrier's negligence. *Holmes v. R. R.,* 186 N. C., 58; *Peele & Copeland v. R. R.,* 149 N. C., 390;

*Everett v. R. R.,* 138 N. C., 68; *Parker v. R. R.,* 133 N. C., 335; *Hosiery Co. v. R. R.,* 131 N. C., 238; *Mitchell v. R. R.,* 124 N. C., 236. As to the carriage of livestock, this rule does not disappear. As to livestock this rebuttable presumption of negligence has merely been modified in keeping with the character and nature of animate goods and the peculiar dangers to which such freight is subjected. The carrier is not presumptively liable for injuries growing out of the natural propensities and innate viciousness of the animals, in the absence of proof of negligence, but, with that exception borne in mind, the presumption of negligence arising from delivery in a damaged condition is equally applicable to shipments of animals and, being sufficient in itself to take the case to the jury, casts the burden of going forward with evidence (the risk of nonpersuasion) upon the defendant carrier. *Osborne v. R. R.,* 175 N. C., 594; *Teeter v. Express Co.,* 172 N. C., 616; *Schloss v. R. R.,* 171 N. C., 350; *Mewborn v. R. R.,* 170 N. C., 205; *Holton v. R. R.,* 165 N. C., 155; *Jones v. R. R.,* 148 N. C., 580; *C. & O. R. R. v. Mfg. Co.,* 270 U. S., 416. As to the difference between burden of proof and burden of going forward, see *Speas v. Bank,* 188 N. C., 528. Aided as he was by this rule, plaintiff's evidence was sufficient to require the submission of the case to the jury. In the granting of the motion for judgment as of nonsuit there was error.

Reversed.