W. B. BENNETT v. ATLANTIC COAST LINE RAILROAD COMPANY, INC.

(Filed 24 May, 1950.)

**1. Trial § 23b—**

A *prima facie* showing takes the case to the jury for its determination as to whether or not the necessary facts have been established.

**2. Carriers § 10—**

Evidence tending to show that two mules and nineteen horses were delivered to initial carrier in good condition, that upon arrival at destination some of the animals were dead and the rest of the animals were in a bad and weakened condition with cuts and bruises, is sufficient to raise a *prima facie* case of negligence in the shipper's action against the terminal carrier to recover the damage, and the carrier's motion for nonsuit should have been denied.

APPEAL by plaintiff from *Crisp, Special Judge,* at November Term, 1949, of COLUMBUS.

Civil action to recover of defendant, as delivering carrier, damages for injuries to shipment of horses and mules in interstate shipment from Winchester, Indiana, to Whiteville, North Carolina, resulting from actionable negligence of carriers.

Plaintiff alleges in his complaint substantially these pertinent facts: That on 28 January, 1947, Willard Lennox delivered to the New York Central Railroad at Winchester, Indiana, two mules and nineteen horses, the property of Lennox and Bennett, in good condition, and consigned them to Lennox and Bennett at Whiteville, North Carolina, and received therefor a receipt; that the mules and horses were transported from Winchester, Indiana, by said initial carrier, New York Central Railroad, and the connecting carriers Louisville & Nashville Railroad and Georgia Railroad and the defendant's railroad,—the latter being the terminal or delivery carrier which delivered them to Lennox and Bennett at Whiteville, North Carolina, on 3 February, 1947; that upon the arrival and such delivery, the mules and horses "were suffering from bruises, cuts, muddy condition, wounds, lack of food and water, diseases, sickness, and other injuries such as are not the ordinary and usual results of transporta-

tion to such extent that one mule and four horses were dead upon arrival, or died almost immediately thereafter, and four horses were in such condition that their market value was greatly reduced"; that the death of and damage to said mules and horses were "caused by the carelessness and negligence of the defendant through its agents, servants, and employees, in that it did negligently, carelessly, and recklessly delay the transportation of the same, expose the same to the weather, jarred, jammed and bruised the same, and loaded the same in a defective and inadequate car, and failed to properly feed and water the shipment, all of which negligent acts proximately resulted (in) and caused the aforesaid death, sickness and injury to the aforesaid livestock" to the damage of Lennox and Bennett in the sum of $2,120.00; that "Lennox and Bennett gave due notice of the aforesaid claim, and made due demand upon the defendant, and defendant has failed and wrongfully refused to make good any of the . . . damages"; and that Lennox has assigned to plaintiff all of his interest in the partnership of Lennox and Bennett, including his right of action against defendant for the damages aforesaid.

Defendant, answering the complaint of plaintiff, denies the material allegations, and avers, substantially the following facts: That on 28 January, 1947, Willard Lennox delivered to the New York Central Railroad at Winchester, Indiana, two mules and 19 horses loaded in a car for shipment and received a bill of lading or livestock contract for said shipment, and said shipment was made in accordance with said livestock contract; that the contract was in writing and each and every part thereof is pleaded as fully as if incorporated herein; that in said contract Willard Lennox, from Winchester, Indiana, was named as consignor, and Lennox and Bennett, of Whiteville, North Carolina, were named as consignees; that the shipment moved in accordance with the provisions of said livestock contract by the route and over the lines of the carriers named therein and was delivered at Whiteville and unloaded on 3 February, 1947, and charges for said transportation were paid; and that if said animals were injured, and some of them thereafter died, that said injuries were not caused by the negligence of the carrier or its employees but were occasioned by overloading or crowding one upon another, kicking or otherwise injuring themselves or each other, suffocation, heat or cold, changes in weather or other causes beyond the carrier's control, and Section 1 (a) and (b) of said livestock contract, reading as follows are pleaded in bar of plaintiff's claim in this action:

"Sec. 1 (a) Except in the case of its negligence proximately contributing thereto, no carrier of all or any of the livestock herein described shall be liable for any loss thereof or damage thereto or delay caused by the act of God, the public enemy, quarantine, the authority of law, the inherent vice, weakness, or natural propensity of the animal, or the act

BENNETT *v.* R. R.

or default of the shipper or owner, or the agent of either, or by riots, strikes, stoppage of labor or threatened violence.

"(b) Unless caused by the negligence of the carrier or its employees, no carrier shall be liable for or on account of any injury or death sustained by said livestock occasioned by any of the following causes: Overloading, crowding one upon another, escaping from cars, pens, or vessels, kicking or goring or otherwise injuring themselves or each other, suffocation, fright or fire caused by the shipper or the shipper's agent, heat or cold, changes in weather or delay caused by stress of weather or damage to or obstruction of track or other causes beyond the carrier's control."

And, defendant, further answering, says that said mules were accepted at destination without exception and were unloaded by consignee, and the defendant pleads subsection (c) of Section 4 of the livestock contract under which said livestock was transported, which reads as follows, in bar of plaintiff's right to recover in this action:

"Sec. 4 (c) Before the livestock is removed from the possession of the carrier or mingled with other livestock the shipper, owner, consignee or agent thereof shall inform in writing the delivering carrier of any visible or manifest injury to the livestock."

The statement of case on appeal, shown in the record on appeal, discloses that upon the trial in Superior Court the parties stipulated that the shipment referred to in the complaint moved in interstate commerce, and that the complaint states facts sufficient to cause the action to be tried in Superior Court of Columbus County, and that, in the trial, the parties shall be entitled to all the rights and privileges and subject to all obligations and regulations included in the Federal Law.

And it is stated that in defendant's answer, "The defendant says that notice of claim was filed with the railroad on March 7, 1947."

The record further shows that on the trial plaintiff introduced in evidence contract or bill of lading which was admitted by defendant as the contract or bill of lading, which, among other things, reads as follows: "Now, therefore, this agreement witnesseth, that the carrier has received from the shipper, subject to the classifications and tariffs in effect on the date of issue of this agreement, the livestock described below, in apparent good condition, except as noted."

Also on the trial plaintiff, as witness for himself, testified: That on 28 January, 1947, he was doing business under the name of Lennox and Bennett, a partnership; that the partnership was dissolved about the middle of March; and that in the dissolution of the partnership assets, including this action against the Atlantic Coast Line, were assigned to him.

And plaintiff further testified substantially as follows: That on 3 February, 1947, he received a shipment of 19 horses and 2 mules from

the Atlantic Coast Line Railroad; that the shipment arrived around 12:30 at night; that he was there when the train arrived; that one of the shipment was dead and twenty in about as bad condition as he had ever seen a carload of stock—the worst he had ever seen; that he spoke to the conductor of the freight train and went to the telephone and called Mr. Benton, the railroad agent, to come down there; that the agent did not come down, but ordered him, the plaintiff, to go ahead and unload, and carry the stock over and put it in the barn, and that is what he did, and notified the agent early the next morning as to the condition of the stock; that the railroad sent its doctor and he gave them medicine; that five of them died after they arrived—one being dead when they arrived—and the last one died in about a week. And the plaintiff continued: "The car, on arrival in Whiteville, had the door next to the chute from the middle down was broke out. About half the door was patched with . . . three-quarters by four ceiling strips or flooring stuff. That was below the door . . . half-way of it, and it was at the bottom of it, looked like a horse had been chunked through it. Up . . . on the end of the car—on the other side of the window—there was a place broke out . . . it looked like one had been through the end of it . . . There was one mule that had his head busted open up here,—pretty bad. One was scarred up. They were muddy . . . looked as if they had been unloaded in an out-of-door stock pen . . . the breakage in the back of the car could not have been caused by kicking . . . When the horses were unloaded . . . clean up to their stomachs and a little way up their sides, they were covered and stuck in some kind of stiff clay or mud, more like a putty . . . They were in terrible condition, just as bad as if you had unloaded them at a stock pen along the road that never had had a shelter over it. And they were weak, undernourished . . . The reasonable market value of these horses and mules on their arrival in Whiteville under the condition that they were in, I would say $250 was a big price for the whole outfit . . . If they had been in good condition upon arrival the reasonable market value would have been $2500, first cost."

Plaintiff offered in evidence five freight bills: (1) The freight charges at Winchester, Indiana, on 19 horses and 2 mules in car "NYC 22436"; (2) for advances on same at Corbin, Ky., (3) for feeding same at Howell Stock Yard, Ga., (4) for "21 horses and mules unloaded and reloaded at Augusta, Ga., account animal down in car—service charge $2.50, Rebedding car—1.38-3.88" at Augusta, Ga., and (5) for "unloading, reloading and F&W car above horses 8.55" at Florence, S. C. And plaintiff testified that he could not read, and that these are all the receipts turned over to him on payment.

Plaintiff also offered testimony of others as to the condition of the car in which the livestock were received, and as to the condition of the livestock.

The record shows that "At the close of plaintiff's evidence, the defendant moves for judgment as of nonsuit and that the case be dismissed. Motion overruled."

And, thereupon, defendant offered evidence tending to support the averments set out in its answer.

At the close of all the evidence defendant renewed its motion for judgment as of nonsuit. The motion was allowed. And, from judgment in accordance therewith, plaintiff appeals to Supreme Court, and assigns error.

*Irvin B. Tucker, Jr., for plaintiff, appellant.*

*Poisson, Campbell & Marshall, V. E. Phelps, and E. K. Proctor for defendant, appellee.*

WINBORNE, J.   Plaintiff, in this action, has the burden of proving the carrier's negligence as one of the facts essential to recovery, and, when he introduced evidence tending to show delivery of the shipment of horses and mules to the carrier in good condition and its delivery to the consignee in damaged condition, such evidence made out a *prima facie* case of negligence. *Chesapeake & O. R. Co. v. Thompson Mfg. Co.,* 270 U.S. 416, 70 L. Ed. 659; *Davis Livestock Co. v. Davis,* 188 N.C. 220, 124 S.E. 157; *Farming Co. v. R. R.,* 189 N.C. 63, 126 S.E. 167; *Fuller v. R. R.,* 214 N.C. 648, 200 S.E. 403; see also *Precythe v. R. R.,* 230 N.C. 195, 52 S.E. 2d 360.

In the *Davis case, supra,* it is stated: "The defendant admitted the contract of carriage, the receipt of the stock, and the death of one of the mules while in its possession. In these circumstances the loss is presumed to have been attributable to defendant's negligence."

And our decisions are to the effect that a *prima facie* showing may take the case to the jury, and it is for the jury to determine whether or not the necessary facts have been established. *Speas v. Bank,* 188 N.C. 524, 125 S.E. 398; *Jeffrey v. Mfg. Co.,* 197 N.C. 724, 150 S.E. 503; *Hutchins v. Taylor-Buick Co.,* 198 N.C. 777, 153 S.E. 397; *Oil Co. v. Iron Works,* 211 N.C. 668, 191 S.E. 508; *Falls v. Goforth,* 216 N.C. 501, 5 S.E. 2d 554.

In *Speas v. Bank, supra,* the rule is tersely stated in this manner: "A *prima facie* case, or *prima facie* evidence, does not change the burden of proof. It only stands until its weight is met by evidence to the contrary. The opposing party, however, is not required as a matter of law to offer evidence in reply. He only takes the risk of an adverse verdict if he fails to do so. The case is carried to the jury on a *prima facie* showing, and it is for them to say whether or not the crucial and necessary facts have been established."

And in *Hutchins v. Taylor-Buick Co., supra,* it is said that "In the absence of some fatal admission or confession, as against a demurrer to the evidence, or motion to nonsuit, a *prima facie* showing carries the case to the jury."

Applying these principles to the case in hand, we are of opinion and hold that the evidence offered by plaintiff makes out a *prima facie* case, and that the evidence offered by defendant fails to show any fatal admission or confession which would take the case out of the rule in cases of *prima facie* showing, as hereinabove stated.

Hence the judgment below, sustaining the motion for judgment as of nonsuit, is

Reversed.