## JACKSON et al. v. THE SACRAMENTO VALLEY RAILROAD COMPANY.

THE liability of a railroad company, as common carriers, differs from their liability as warehousemen.

As common carriers, they are bound to safely transport and deliver goods to the point of their destination, unless the same are lost by the act of God or the public enemy; and the burden of proving that they are thus lost, rests upon the company.

When the goods arrive at the point of destination, and are placed in the warehouse of the company, its liability as warehousemen commences, and from that time

it is bound only to use ordinary care and diligence in safely keeping and delivering the goods; and the burden of proof in case of loss is on the bailor.

In an action against a railroad company for loss of goods as common carriers, where the proofs render it uncertain whether the goods are lost while being transported, or after being deposited in the warehouse, and there is no proof of want of ordinary care, the judgment will be reversed.

APPEAL from the District Court, Sixth Judicial District, Sacramento County.

The facts are stated in the opinion of the Court.

*William S. Wood*, for Appellants.

The transportation of goods, and the storage of goods, are contracts of a different character; and though one person or company may render both services, yet the two contracts are not to be confounded, or blended, because the legal liabilities attending the two are different. (*Thomas* v. *Boston & Prov. R. Corp.*, 10 Met. 476.)

And where such suitable warehouses are provided, and the goods which are not called for on their arrival at their places of destination are unloaded and separated from the goods of other persons, and stored safely in such warehouses or depôts, the duty of the proprietors, as common carriers, is in our judgment terminated. They have done all they agreed to do, etc. (*Thomas* v. *Boston & Prov. R. Corp.*, 10 Met. 477.)

If for any cause the consignee is not at the place to receive his goods from the cars, as unladen, and in consequence of this they are placed in the depot, the transit ceases. (*Norway Plains Co.* v. *Boston & M. R.*, 1 Gray, 276; *Rowe* v. *Pickford*, 8 Taunt. 83; *In re Webb*, Id. 443; *Foster* v. *Frampton*, 6 Barn. & Cres. 107.)

When goods were conveyed by a carrier by water, and deposited in the carrier's warehouse for the convenience of the vendor, to be delivered out as he should want: *held*, that the transit was at an end, etc. (*Allan* v. *Grippen*, 6 Cromp. & Jerv. 218.) As a common carrier, defendant was responsible for the goods, at all events, and plaintiffs were only required to show that they never received the goods; while as a warehouseman, defendant is only liable for ordinary negligence, and the burden of proof is on the plaintiffs to show that defendant failed to exercise that care of the goods which prudent men ordinarily exercise in the care of their own

property. With certain exceptions, which will hereafter be taken notice of, as to innkeepers and common carriers, it would seem that the burden of proof of negligence is on the bailor, and proof merely of loss is not sufficient to put the bailee on his defense. (Story on Bail. Sec. 410 ; *Tompkins* v. *Saltmarsh*, 14 Sergt. & Rawle, 272.) When the loss is shown, the proof of negligence or want of due care is thrown upon the bailor, and the bailee is not bound to prove affirmatively that he used reasonable care. (2 Kent's Com. 791 ; *Bunyan* v. *Caldwell*, 7 Humph. 134.)

A warehouseman not chargeable with negligence is not responsible for goods intrusted to him, when stolen or embezzled by his storekeeper or servant, and the *onus* of showing negligence is on the owners. (*Schmidt* v. *Blood*, 9 Wend. 268 ; *Finucane* v. *Small*, 1 Esp. 319.)

*H. O. Beatty*, for Respondents.

This case is reduced to a single proposition. A warehouseman takes goods to store for hire. The depositor demands them, and he cannot or will not account for them. Is this not sufficient evidence of carelessness ? If not, it would always be in the power of a warehouseman to eat, to burn, or otherwise consume all such articles as were suitable for food, fuel, or other consumption, and the depositor could never make proof of his losses.

The common law never made any such foolish rules. He who takes an article to keep for hire, must return it or account for its loss. When the keeper has shown the loss by fire, by theft, or robbery, then the burden of proof as to negligence may be thrown on the depositor; but not until then. This rule is clearly laid down in a note to a case in 7 Cow. 501, 3d Ed. : " The distinction would seem to be, that when there is a total default to deliver the goods bailed, on demand, the *onus* of accounting for the default lies with the bailee ; otherwise he shall be deemed to have converted the goods to his own use, and trover will lie (2 Salt. 655) ; but when he has shown a loss, or where the goods are injured, the law will not intend negligence. The *onus* is then shifted upon the plaintiff." None of the authorities cited by the appellants contradict this rule. Appellants' counsel first quotes part of a section from Story on

Bailments. It is only necessary to read the balance of the section, to show how limited and inapplicable to this case is the rule laid down.

The quotation from Kent is in conformity to respondents' views : " When the loss is shown," that is, theft, robbery, etc., " then the burden of proving negligence is shifted to the plaintiff." So in the case from 9 Wendell. The embezzlement by the storekeeper's servant being shown, the negligence of the master must be proved. In the case of *Schmidt* v. *Blood* (9 Wend. 271), the Court uses this expression : " The *onus* of showing negligence seems to be on the plaintiff, unless there is a total fault in delivering or accounting for the goods." Here is the case in a nutshell—there was a total failure to account for the goods in dispute. Not having accounted for them, the presumption is, the bailee, either negligently or intentionally, converted them. But whatever the legal presumption might be, there was some evidence tending to show negligence. The inability of the bailees to give any account of the goods was at least some evidence of carelessness. It satisfied the jury and the Court below. It is not a case for the interference of this Court.

CROCKER, J. delivered the opinion of the Court—NORTON, J. concurring.

This is an action against the defendants, as common carriers, for the value of certain goods received by them as such, and which it is alleged they failed to deliver to the plaintiff. The case was tried by a jury, who, under the direction of the Court, found the following special verdict: " 1st. Were the packages of goods in question in this suit, at the depôt of defendants, among other packages of the plaintiffs at the time the agent of plaintiffs signed the receipts for the same ? Answer: No. 2d. Were the packages in question delivered to and received by the agent of plaintiffs ? Answer: No. 3d. Were the said packages lost to plaintiffs by the carelessness, want of ordinary care, or ordinary negligence of defendants or their agents ? Answer: Yes." On this verdict the Court rendered a judgment for the plaintiffs for the sum of two hundred and five dollars and costs of suit; from which defendants appeal.

One important question involved in this case is the extent of

liability incurred by railroad companies engaged in the transportation of goods. There is no doubt that after they receive goods, and while the same are being transported from the place of receipt, and until they arrive at the depôt or warehouse of the company where they are to be delivered, the latter are bound to perform all the duties and incur all the liabilities and responsibilities of common carriers. Although the general rule is, that goods received by a common carrier must be actually delivered to the consignee at his residence or place of business, yet this rule is varied by well-established customs and usages. Thus, it does not apply to railroad companies, whose well-established custom is to receive and deliver goods at regular stations and depôts or warehouses, and who do not assume any obligations to receive or deliver goods at any other places. After goods are received, and while they are *in transitu* from the station or depôt where they are received to the station or depôt where they are to be delivered, they are acting as common carriers, and are liable as such accordingly; but when the goods arrive at the proper depôt for delivery, if the consignee or his agent is not present ready to receive them, it is the duty of the company to deposit them in their warehouse for safe keeping until the consignee is ready to receive them, or at least to keep them a reasonable time for that purpose. But their liability as common carriers ceases in such cases when the goods are deposited in the warehouse; and from that time their liability as warehousemen commences, and continues until they deliver the goods to the consignee, or in case of his unreasonable delay, they place them in charge of some other warehouseman, to keep for the consignee. (Angell on Carriers, Secs. 301–305; Story on Bailments, Sec. 448.)

If the goods are lost, injured, or destroyed while they are in the custody of the railroad company as common carriers, or if they fail to deliver them at the proper place, either to the consignee or in their warehouse, they are liable to the owner as common carriers, under the rules of law relating thereto; but if they are safely delivered in the proper warehouse of the company and afterwards lost, injured, destroyed, or not delivered to the proper person, then their liability is that of warehousemen, and not of common carriers. The liabilities of these two classes of persons is entirely

Jackson *v.* Sacramento Valley Railroad Co.

different, and it is, therefore, important that the point of change of liability should be clearly defined. In this respect the special verdict is fatally defective, as it does not find whether or not the goods in question were deposited in the warehouse of the company; but it merely finds that they were not in the depôt "among other packages of plaintiffs at the time the agent of plaintiffs signed the receipt for the same," which the evidence shows was not given until several days afterwards. This finding is merely to the effect that they were not with a particular lot of goods in the depôt; but it leaves the important facts whether they had not been deposited in the depôt, and whether they were not at some other place in the depôt at that time, uncertain and undetermined.

It was the duty of the defendants, *as common carriers*, to safely deliver the goods at Folsom, the termination of their road, at all events, unless the goods were lost by the act of God, or the public enemy; and the burden of proof to show that the goods were so lost was upon them. But as warehousemen, they were bound only to use ordinary care and diligence in safely keeping and delivering the goods; and the burden of proof, in case of loss, to show that such loss occurred for want of ordinary care and diligence on their part, is upon the plaintiff. (Story on Bail. Secs. 444–451, 454.)

But the plaintiff contends that it can make no difference in what character the defendants are to be held liable, as the jury found, by their special verdict, that the goods were lost by the carelessness and want of ordinary care, or negligence of the defendants. On the other hand, the defendants insist that the complaint charges them as common carriers, and not as warehousemen; and that the plaintiff is therefore bound to prove that the loss occurred before the goods reached the depot at Folsom. We do not think this objection of the defendants to the complaint sufficient to justify us in reversing the judgment on that ground. Although the complaint is very specific in charging the defendants as common carriers; yet we do not see that they have been taken by surprise in any way, or mislead thereby, or prevented from setting up every defense they may have had to the action. In this class of cases, there is certainly great propriety in stating the two characters in which the defendants acted; but it is not, perhaps, essential to the sufficiency of the complaint.

The defendants also insist, that this third finding of the special verdict is contrary to the evidence, and that the evidence showed clearly that the goods in question were safely deposited in the warehouse of the defendants at Folsom; and that the plaintiff, on whom the burden of proof lay, failed to produce any evidence of carelessness or negligence on their part; but on the contrary, the defendants proved the greatest degree of care in the matter.   We have examined the evidence, and these positions of the defendants are fully sustained by the record.   It is not a case of conflict of testimony, where the jury are the sole judges; but there is a total want of proof by the plaintiff, of negligence on the part of the defendants as warehousemen.

The proof of care on the part of the defendants is full and ample; and these facts, in connection with the failure to find whether the loss occurred before, or after, the arrival of the cars at Folsom, leave the questions involved in this case in such a state of uncertainty as to render a new trial necessary, in order that all the questions involved in the case may be fully and properly determined under the rules of law applicable to such cases.

It seems that when the plaintiff's agent called at the defendants' deôpt at Folsom, for the goods, he signed a receipt for all the plaintiff's goods; which receipt included not only the goods in controversy, but a large number of packages of other goods received at the depôt at about the same time.   A question arose as to the effect of this receipt.   The receipt thus given is *prima facie*, but not conclusive, evidence of the delivery of the goods to the plaintiff.   It was open to explanation and proof, to show that although the delivery of the goods was acknowledged, yet that in fact they were not thus delivered.   (*Hawley* v. *Bader*, 15 Cal. 46.)   But the burden of proof in such case is upon the plaintiff, to show any error or mistake in the receipt.

The judgment is reversed, and the cause remanded for a new trial.