CLARK, C. J., dissenting. *Page 229 
Civil action to recover damages for the loss of merchandise.
On 5 October, 1917, the plaintiffs ordered from Friedman Company of New York a box of clothing, which was turned over to the Pennsylvania Railroad Company for transportation and delivery to the purchasers in Asheville. The Pennsylvania Railroad then issued a straight nonnegotiable bill of lading containing this provision:
"No carrier shall be liable for loss, damage, or injury not occurring on its own road or its portion of the through route, nor after said property has been delivered to the next carrier, except as such liability is or may be imposed by law, but nothing contained in this bill of lading shall be deemed to exempt the initial carrier from any such liability so imposed." Section 2. The defendant was the terminal carrier. The agent of the defendant in Asheville collected the freight charges and delivered the box to the plaintiffs; and the box, when opened, was found to contain paper and packing, but no part of the original shipment. The plaintiffs filed with the defendant a claim for the invoice price of the goods, together with the charges for freight, and brought suit against the defendant after it had refused to make payment. The Pennsylvania Railroad is not a party to the action.
The issues were answered as follows:
"1. Did the initial carrier, Pennsylvania Railroad Company, (215) receive from J. Friedman Company, to be transported to the plaintiff at Asheville, North Carolina, the box containing the clothing mentioned and described in the complaint? Answer: `Yes.'
"2. If so, was said clothing lost by reason of the negligence of the Pennsylvania Railroad Company, as alleged in the complaint? Answer: `Yes.'
"3. If said clothing was delivered to said Pennsylvania Railroad Company, was the same lost by the negligence of the Southern Railway Company? Answer: `No.'
"4. What damages, if any, are the plaintiffs entitled to recover of the defendant? Answer: `$292.14, with interest from 5 October, 1917.'"
The plaintiffs made a motion for judgment upon the verdict on the ground that the bill of lading constituted a contract or partnership by which the receiving carrier and the connecting lines became jointly and severally liable for the loss. The court's denial of the motion is assigned for error. *Page 230 
The case was appropriately submitted to the jury on the question of the defendant's negligence. Proof that the box was empty when delivered to the plaintiffs required of the defendant an election between introducing testimony in exoneration and risking an adverse verdict on the evidence of the plaintiffs. Meredith v. R. R., 137 N.C. 478; White v. Hines,182 N.C. 275. But the verdict shows that the loss was due, not to the negligence of the defendant, but to the negligence of the initial carrier. The answer to the third issue exonerated the defendant from the charge of negligence. The question for decision, then, is this: Upon the pleadings and the proof in this cause, can the terminal carrier, who collected the freight charges when the shipment was delivered, be held liable in damages to the consignee for the negligence of the receiving carrier, upon bare proof of carriage on a uniform nonnegotiable bill of lading, which contains the provisions hereinbefore stated? There is no contention that the defendant incurred liability by reason of the joint or concurrent negligence of separate lines independently operated.
As a general rule, the liability of a common carrier is presumed to be its common-law liability, and any party attempting to prove otherwise carries the burden of showing facts and circumstances which change or affect such liability. N. J. Steam Nav. Co. v. Bank, 6 How. 344; R. R. v. Stock Co., 136 Ill. 643; R. R. v. Barrett, 36 Ohio St. 448; (216) Jackson v. R. R., 23 Cal. 268; Graham v. Davis, 62 Am. Dec. 285; 10 C. J. 110. At common law a carrier was liable for loss or damage to property in its possession, not due to the act of God, the fault of the shipper, or the inherent nature or quality of the goods; but such carrier was bound to carry the shipment only over its own line, and to deliver it without damage to the next succeeding carrier. The English doctrine announced in 1841, in Muschamp v. R. R., 8 Mees. W. 421, has been repudiated by the Supreme Court of the United States, and by the greater number of the American courts, and the generally accepted doctrine has been stated as follows: In the absence of any contract, or partnership agreement, or constitutional or statutory provision, a common carrier is not required to transport goods to a point beyond its line, for its obligation extends only to carriage to the end of its route and delivery to the consignee or to the next succeeding carrier; and in these circumstances the carrier, whether initial, intermediate, or terminal, is liable only for such loss or damage as results from its own negligence. In R. R. v. Myrick, 107 U.S. 102 (decided in *Page 231 
1883), Mr. Justice Field said: "The general doctrine, then, as to transportation by connecting lines, approved by this Court, and also by a majority of the state courts, amounts to this: that each road, confining itself to its common-law liability, is only bound, in the absence of a special contract, to safely carry over its own route and safely to deliver to the next connecting carrier, but that any one of the companies may agree that over the whole route its liability shall extend. In the absence of a special agreement to that effect, such liability will not attach, and the agreement will not be inferred from doubtful expressions or loose language, but only from clear and satisfactory evidence." R. R. v. Ex. Co.,117 U.S. 1; R. R. v. R. R., 110 U.S. 667; R. R. v. Pratt, 22 Wall. 6; R. R. v. Riverside Mills, 219 U.S. 186; McConnell v. R. R.,163 N.C. 504; Phillips v. R. R., 78 N.C. 294; Lindley v. R. R.,88 N.C. 550; Mills v. R. R., 119 N.C. 694.
The plaintiffs insist, however, that this principle is not applicable here for the reason that it has been modified both by the Carmack amendment to the Hepburn law, and by the contract of the connecting carriers. It becomes material, therefore, to inquire, first, into the practical operation of the Carmack amendment in its relation to intermediate and terminal carriers. This act provides: "That any common carrier, railroad, or transportation company receiving property for transportation from a point in one state to a point in another state shall issue a receipt or bill of lading therefor, and shall be liable to the lawful holder thereof for any loss, damage, or injury to such property, caused by it or by any common carrier, railroad, or transportation company to which such property may be delivered, or over whose line or lines such property may pass, and no contract, receipt, rule, (217) or regulation shall exempt such common carrier, railroad, or transportation company from the liability hereby imposed: Provided, that nothing in this section shall deprive any holder of such receipt or bill of lading of any remedy or right of action which he has under existing law.
"That the common carrier, railroad, or transportation company issuing such receipt or bill of lading shall be entitled to recover from the common carrier, railroad, or transportation company on whose line the loss, damage, or injury shall have been sustained, the amount of such loss, damage, or injury as it may be required to pay to the owners of such property as may be evidenced by any receipt, judgment, or transcript thereof." 55 Law. Ed. U.S. 178. Act 29 June, 1906; 34 St. L., 595. The "existing law" referred to is, of course, the Federal law. Express Co. v.Croninger, 226 U.S. 491. *Page 232 
Under this act, when the receiving carrier accepts an interstate shipment, it is conclusively treated as having made a through contract, and will be liable for loss or injury occurring on any connecting line over which the shipment may pass, as well as for loss or injury occurring on its own line. Express Co. v. Croninger, supra; R. R. v. Carl, 227 U.S. 639. This, on the principle that each connecting carrier is made the agent of the initial carrier. In R. R. v. Riverside Mills, 219 U.S. 204, Mr.Justice Lurton said, "Reduced to its final results, the Congress has said that a receiving carrier, in spite of any stipulation to the contrary, shall be deemed, when it receives property in one state, to be transported to a point in another, involving the use of a connecting carrier for some part of the way, to have adopted such other carrier as its agent, and to incur carrier liability throughout the entire route, with the right to reimbursement for a loss not due to its own negligence." R. R. v. Wallace,223 U.S. 481; Commis. Co. v. R. R., 262 Ill. 400; R. R. v. Ward,169 S.W. 1035. By virtue of this act, the intermediate and terminal carriers are made the agents of the receiving carrier; but the act does not purport, in terms express or implied, to make any connecting line liable in damages for the negligence of the initial carrier.
The next question raised by the plaintiffs is whether, in the present case, without regard to the Carmack amendment, there was a special contract between the several carriers by which the defendant became liable for the negligence of the carrier first receiving the shipment.
In approaching the question we do not controvert the established principle that a special contract or partnership relation among connecting lines may make the intermediate or terminal carrier liable for loss or injury, whether occurring on its own line or on the line of another connecting carrier. Barter v. Wheeler, 6 A. Rep. 434; Phillips v. R. R.,supra; Lindley v. R. R., supra; R. R. v. Myrick, supra.
But in the complaint there is no allegation upon which to (218) base the application of this principle. The plaintiff does not allege either a partnership or a special contract for joint transportation. The substance of the only relevant and material allegations in the complaint is this: the goods were packed by the shippers and delivered to the receiving carrier, to be transported by it and its connecting carriers to the plaintiffs in Asheville, and the bill of lading was thereupon issued. Considered in the light of section 2 in the bill of lading, the absence of an allegation of a partnership or special contract for joint transportation is all the more marked. Without allegation, proof of such partnership or special contract is incompetent and unavailing; for in our procedure is firmly embedded the principle that proof without allegation is no less fatal than allegation without proof. *Page 233 McKee v. Lineberger, 69 N.C. 217; McLaurin v. Cronly, 90 N.C. 50. In these circumstances the ultimate inquiry is confined to the legal import of the bill of lading. Taken in connection with the allegations referred to, does the receipt or bill itself constitute a partnership among the connecting carriers? If, as we have seen, the Carmack amendment does not create such partnership, we must search for an answer in the relation that would have existed between the connecting lines, by virtue of the bill of lading, if this amendment had not been enacted. Under such conditions — if the Carmack amendment were not in force — the receiving carrier, when the shipment was tendered, would have had the right to contract either to carry the goods to their destination or to carry them safely over its own line only, and then to deliver them to the next carrier. In case of the latter election the next connecting carrier would have been the agent of the shipper; and in case of the former, the intermediate or terminal carrier would have been the agent of the receiving carrier. In neither event would the initial carrier have been the agent of either of the connecting lines. R. R. v. RiversideMills, supra; 10 C. J. 518. This conclusion is fortified by the provisions of section 2 in the bill of lading. This section is not a limitation by contract of the defendant's common-law liability; for no common-law obligation devolves upon any carrier to transport goods over lines other than its own, and hence there is no common-law liability for loss or damage not occurring on its own line and not caused by its own negligence. The plaintiffs, not having alleged a partnership or special contract, did not tender an issue relating to either question. The case turned upon the issues as to negligence, and the verdict was adverse to the plaintiffs. At the trial there was neither an allegation nor an issue of a partnership or special contract, and we hold that there was no error in the judgment of the court. The plaintiffs cited Paper Box Co. v.R. R. 177 N.C. 351, in support of their contention; but that case and this are entirely distinct. Indeed, the question arising (219) in the instant case has not heretofore been presented to this Court for decision.
No error.