BUTLER INTERNATIONAL, INC., D/B/A MSI/MARUNAKA, PLAINTIFF v. CENTRAL AIR FREIGHT, INC., DEFENDANT

No. 8919SC1337

(Filed 2 April 1991)

1. **Carriers § 118 (NCI4th) — machine damaged in transit — defense of improper packaging unavailable to carrier — directed verdict for shipper proper**

   In an action to recover for damage to a machine during shipment by defendant air freight carrier, the trial court did not err in directing verdict for plaintiff shipper, since defendant was liable for the damage done to plaintiff's machine in transit absent the defense of shipper's negligence; since defendant had the right to refuse to accept any shipment whose packaging defendant considered improper or insufficient, defendant was precluded from maintaining a defense of improper packaging where it accepted the container for shipment; and defendant having accepted the crate, the only inference was that its destruction and damage to the machine were due to defendant's negligence in transit.

   **Am Jur 2d, Carriers §§ 529, 530.**

2. **Carriers § 134 (NCI4th) — machine damaged in transit — amount of damages recoverable by shipper**

   In an action to recover for damage to a machine during shipment by defendant carrier, the trial court properly con-

cluded that defendant was obligated to pay plaintiff the full amount of the declared value of the machine since the bill of lading showed a declared value of $18,000; plaintiff's evidence showed that it had paid $329.50 for excess value and that it had been billed $18,000 for the machine by the manufacturer; the evidence was undisputed that the machine was not usable in its damaged condition; there was evidence that value at destination was $500, the amount which could be realized if the machine were taken apart and parts were sold; and defendant presented no credible evidence suggesting that the parties' contractual agreement as to stipulated value should not be enforced.

**Am Jur 2d, Carriers §§ 286, 640, 644, 652.**

APPEAL by defendant from judgment entered in open court on 23 August 1989 by *Judge Russell G. Walker, Jr.*, in RANDOLPH County Superior Court. Heard in the Court of Appeals 7 June 1990.

*O'Briant, O'Briant & Bunch, by W. Edward Bunch, for plaintiff-appellee.*

*Carruthers & Roth, P.A., by Kenneth L. Jones, for defendant-appellant.*

PARKER, Judge.

Plaintiff Butler International, Inc., d/b/a MSI/Marunaka instituted this civil action to recover the sum of $18,885.50 from defendant Central Air Freight as a result of damage in transit to an OTM-2400 edgebanding machine (also referred to as an OTF-2400). At trial the evidence tended to show the following: Plaintiff sold five wood-working machines — four KCB-50s and one OTM-2400 — to American Marunaka. Since American Marunaka had only a sales office, the machines were to be shipped to Asian Pacific Distribution Corporation's warehouse in Torrance, California. Plaintiff hired defendant to transport the five machines from plaintiff's place of business in High Point, North Carolina, to Torrance, California. On 6 May 1988 Mark Anderson, defendant's agent, picked up the machines at plaintiff's place of business. A bill of lading for the machines was executed by Tom Evans, plaintiff's agent, and by Mr. Anderson. On the bill of lading the declared value of the four KCB-50s was $12,000.00 each. The fifth machine, the OTM-2400, the only one involved in this action, had a declared value of $18,000.00. Defend-

ant's airbill showed transportation charges of $885.50, which plaintiff paid. Of this amount, $329.50 was for "declared excess value" of the machinery. At some point prior to the time of its arrival in Torrance, California, the OTM-2400 was damaged.

According to plaintiff's president, Tim Butler, when delivered to defendant, the OTM-2400 was bolted to a skid, wrapped in plastic and completely encased in a wooden crate with the exception of the top of the machine. From the testimony of Mr. Masao Nishioka, the manager of Asian Pacific's warehouse who received the machine, the machine was damaged in the following manner:

> That particular unit came along on two pieces of four-by-four bolted to the machine on the bottom of the machine and came in really bad shape. One of the four-by-four's [sic] was ripped off, and it looked like it fell down on the ground. I don't know how it happened, but dropped or knocked down or something, and some bottom pieces, which was [sic] bolted to the four-by-fours was [sic] bent. And the screws were ripped off and some wiring were teared(sic) off, and I believe some other parts attached to the machine was [sic] also broken. We immediately thought this was really damaged, so we immediately called him [Mr. Ozaki] and asked him to come over and look at it.

The damaged machine had been shipped back to the manufacturer in Japan. Plaintiff had not been paid for the damaged machine by American Marunaka. Plaintiff had been invoiced $18,000.00 for the OTM-2400 on 3 March 1988 but still owed the manufacturer, Marunaka International, Inc., $18,000.00 for the machine. Mr. Shoichi Ozaki, Vice President of American Marunaka, corroborated the testimony as to damage to the OTM-2400 and testified that the parts might have been worth $400.00 or $500.00. Mr. Ozaki also testified that the OTM-2400 cost approximately $15,000.00 and sold to a customer for $20,000.00.

Defendant's evidence tended to show that plaintiff had inflated the value of the machine on the bill of lading. According to Evans, who was no longer employed by plaintiff at the time of trial, plaintiff purchased the OTM-2400 for only $6,500.00 and would not have sold it to the California customer for more than $12,500.00. Evans further testified that, contrary to Butler's testimony, the OTM-2400 was packed in a manner such that not only the top, but also both ends of the machine, were exposed. Although Evans had been the person primarily responsible for crating the OTM-2400, in his opin-

ion the packaging was "skimpy" and "poor." Defendant also introduced the deposition testimony of a cargo freight claims inspector, Mr. Earl Chad, whom defendant had hired to inspect the damaged machine. Mr. Chad was tendered and accepted as an expert in the fields of cargo freight claims inspections and packaging evaluation. After he had personally inspected the damaged machine, Mr. Chad's expert opinion was that the packaging had completely failed to protect the machine during normal movement. The expert also gave his opinion that packaging the machine so that both ends and the top were exposed would not be adequate to protect the machine during transport.

At the close of all evidence plaintiff moved for a directed verdict. The basis for this motion was that there was no evidence that defendant informed plaintiff that the packaging was inadequate or refused to ship the machine for this reason. This motion was granted in open court by the trial court. In granting the motion the trial court stated:

> [T]here is no evidence in this case of any contributory negligence on the part of the Plaintiff in shipping these goods. The witness for the Defendant, the manager of the Defendant's terminal, has testified under oath as to what the packaging standards required by the Defendant are for shipments and has further stated under oath that this shipment would not have been received and shipped by the Defendant had it not met those standards. The common carrier is, under the law of this state, is an insurer for the delivery of goods in good condition absent an act of God, an act of a public enemy, the fault of the shipper, or some inherent deficiency in the nature or quality of the goods. There is no fault of the shipper in this case arising from the evidence that has been presented. As to the value, the value shown on the bill of lading is the measure of damage in this case, and the Defendant has been paid a standard fee set by his tariff for the increase of the common carrier's liability to include up to the values placed on the bill of lading.

Accordingly, the trial court awarded plaintiff $18,000.00. Defendant appeals from the grant of directed verdict in favor of plaintiff.

[1] On appeal defendant brings forward multiple assignments of error. We first address defendant's contention that the trial court erred in granting a directed verdict in favor of plaintiff.

On motion for directed verdict all the evidence that tends to support the nonmovant's case must be taken as true and considered in the light most favorable to the nonmovant, who is entitled to the benefit of every reasonable inference which may legitimately be drawn from the evidence. *Mann v. Transportation Co. and Tillett v. Transportation Co.*, 283 N.C. 734, 746, 198 S.E.2d 558, 566 (1973). "A directed verdict for the party with the burden of proof, however, is not improper where his right to recover does not depend on the credibility of his witnesses and the pleadings, evidence, and stipulations show that there is no issue of genuine fact for jury consideration." *Financial Corp. v. Harnett Transfer*, 51 N.C. App. 1, 5, 275 S.E.2d 243, 246, *disc. rev. denied*, 302 N.C. 629, 280 S.E.2d 441 (1981).

Defendant initially argues that the evidence adduced at trial raised a factual issue as to whether plaintiff, the shipper, was negligent in packaging the machine for shipment to California. Specifically, defendant relies on (i) an admission by Tim Butler that his company was responsible for properly packing the machine for shipping, (ii) the testimony of its expert that the machine was improperly packaged to protect it from normal movement during the course of transit and (iii) the testimony of Tom Evans that the machine was poorly packaged.

As defendant is an air freight carrier in interstate commerce, the determination of liability is governed by federal common law. The Federal Aviation Act of 1958, 49 U.S.C. app. §§ 1301 *et seq.* (1982) (herein the "FAA"), as amended by the Airline Deregulation Act of 1978, 49 U.S.C. app. §§ 1371-76 (1982), expressly preempts state regulation of air cargo carriers such as defendant. *Ragsdale v. Airborne Freight Corp.*, 173 Ga. App. 48, 49, 325 S.E.2d 428, 430 (1984) (citing 49 U.S.C. app. § 1305(a) (1982) ); *see also Cummings v. Purolator Courier Corp.*, 670 F. Supp. 92, 94 (S.D.N.Y. 1987), and cases cited therein. The deregulation of airline cargo service in no way altered, however, the applicability or substance of prior federal common law rules of contract for fixing the extent of a carrier's liability for loss or injury to goods during interstate transportation. *See, e.g., First Pennsylvania Bank v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1122 (3d Cir. 1984); *U.S. Gold Corp. v. Federal Exp. Corp.*, 719 F. Supp. 1217, 1224 (S.D.N.Y. 1989) (citing additional cases), *certified for appeal*, 1990 WL 6579 (S.D.N.Y. Jan. 25, 1990) (WESTLAW). Federal common law governs because the FAA does not establish the liability of air carriers, as is the

case for surface carriers under the Interstate Commerce Act. *North American Phillips Corp. v. Emery Air Freight Corp.*, 579 F.2d 229, 233-34 (2d Cir. 1978).

Under federal common law, adopted by North Carolina case law, a carrier is liable for loss of goods in transit unless the carrier can show that the loss was attributable to an act of God, the public enemy, the fault of the shipper or an inherent defect in the goods shipped. *Missouri Pacific R. Co. v. Elmore & Stahl*, 377 U.S. 134, 137, 12 L.Ed.2d 194, 197 (1964); *accord Cigar Co. v. Garner*, 229 N.C. 173, 47 S.E.2d 854 (1948); *see also Merchant v. Lassiter*, 224 N.C. 343, 30 S.E.2d 217 (1944); *Moore v. R.R.*, 183 N.C. 213, 111 S.E. 166 (1922); *Tool Corp. v. Freight Carriers, Inc.*, 33 N.C. App. 241, 234 S.E.2d 758 (1977). Plaintiff establishes a *prima facie* case of liability when he introduces evidence showing delivery of the shipment to the carrier in good condition and its delivery to the consignee in bad condition. *Missouri Pacific R. Co.*, 377 U.S. at 138, 12 L.Ed.2d at 198; *Precythe v. R.R.*, 230 N.C. 195, 52 S.E.2d 360 (1949); *Fuller v. R.R.*, 214 N.C. 648, 200 S.E. 403 (1939); *Edgerton v. R.R.*, 203 N.C. 281, 165 S.E. 689 (1932), *cert. denied*, 288 U.S. 605, 77 L.Ed. 980 (1933). Establishment of the *prima facie* case entitles the plaintiff to have the case submitted to the jury. The burden then shifts to the carrier to produce evidence of one of the above-mentioned conditions which, if established to the satisfaction of the jury, would negate its liability. If the carrier elects to offer no evidence, then it assumes the risk of an adverse verdict. *Precythe v. R.R.*, 230 N.C. at 197, 52 S.E.2d at 361.

In the present case although defendant produced evidence that plaintiff's own negligence contributed to the damage that was sustained during transport of the machine, the evidence showed that defendant would not have shipped the machine if it had not been properly packaged. At trial Kay Dezern was called as a witness by plaintiff. Ms. Dezern, formerly a salesperson with defendant, testified that defendant would not have shipped the crated machine if it had not been packaged properly. Dwight Moore, defendant's terminal manager at the Greensboro, North Carolina terminal, testified that a visual inspection is performed on everything that "hits our dock" and admitted that defendant would not have shipped the machine if it had not been packaged properly, but contended that there were no packaging experts at the terminal and that "[i]f you look at it and the merchandise is enclosed and it doesn't

have any sharp or protruding edges, there are no boards hanging off of it, things of that nature. That's pretty much what we look for."

Defendant's own tariff, introduced into evidence at trial, provides the following:

Rule No. 5 PACKING AND MARKING REQUIREMENTS

1 Shipments must be prepared or packed to insure safe transportation with ordinary care in handling.

2 Any article susceptible to damage by ordinary handling must be adequately protected by proper packing and must be marked or bear appropriate labels.

. . . .

Rule No. 20 SHIPMENTS NOT ACCEPTABLE

The following shipments will not be accepted under any circumstances.

. . .

21 Shipments improperly packed or packaged.

. . . .

Rule No. 30 INSPECTION OF SHIPMENTS

1 All shipments are subject to inspection by CAFI.

. . . .

Rule No. 50 LIABILITIES NOT ASSUMED

. . .

2 Without limiting the generality of Paragraph 1, CAFI shall not be liable for any loss, damage, mis-delivery, or other result caused by:

. . .

C. Improper or insufficient packing, securing or addressing or any other violation of the terms contained herein.

. . . .

Rule No. 140 SHIPMENTS SUBJECT TO DELAY

The following conditions may delay delivery of the shipment to the consignee:

. . .

5 Improperly packaged shipments that have to be repackaged by CAFI or turned back to the shipper for repackaging.

In addition to defendant's tariff, defendant's packaging expert, who examined the machine after delivery in California, testified that if the carrier has staff "perusing" the freight then "obvious discrepancies [in the packaging] should be caught or could be caught at the terminal location before actual movement out of state or out of country." Defendant's own evidence showed that its personnel visually inspected each shipment before it left the terminal. From the testimony the contents and packaging were readily apparent on a visual inspection, and defendant's personnel should have observed and determined that the crate was or was not sufficiently sturdy to withstand the wear and tear of transit. Defendant having accepted the crate, the only inference is that its destruction and damage to the machine were due to defendant's negligence in transit. Since defendant had the right to refuse to accept any shipment whose packaging defendant considered improper or insufficient, defendant is precluded from maintaining a defense of improper packaging where it accepted the container for shipment. Under the applicable law, absent the defense of shipper's negligence, defendant was liable for the damage done to plaintiff's machine in transit.

[2] Defendant also contends that the trial court erred in taking the issue of damages from the jury. Under federal common law defendant's tariffs, together with the bill of lading and airbill in evidence in this case, "constitute the contract of carriage between the parties and 'conclusively and exclusively govern the rights and liabilities between the parties.'" *Neal v. Republic Airlines, Inc.*, 605 F. Supp. 1145, 1147 (N.D. Ill. 1985) (citation omitted). The "'obligation of the carrier must be determined solely from the recitals of the written contract itself.'" *Uniden Corp. v. Fed. Exp. Corp.*, 642 F. Supp. 263, 266 (M.D. Pa. 1986) (quoting *Thomas v. TransWorld Airlines, Inc.*, 457 F.2d 1053, 1058 (3d Cir. 1972)); *see also Husman Const. Co. v. Purolator Courier Corp.*, 832 F.2d 459, 461 (8th Cir. 1987).

Rule No. 82 in defendant's tariff provides:

In consideration of CAFI's rate for the transportation of any shipment, which rate, in part, is dependent upon the value of the shipment, the shipper and all other parties having an interest in the shipment agree that unless a higher value is declared at time of shipment and a greater charge paid at the rate of $.50 per $100.00, the limit of CAFI's liability is $1.00 per pound with a maximum of $100.00 per shipment, plus the amount of CAFI's transportation charges applicable to that part of the shipment lost or damaged. In no event shall CAFI be liable for special, incidental, or consequential damages, including but not limited to loss or profits or income whether or not CAFI had knowledge that such damages might be incurred. Maximum declared value is $75,000.00. Any shipment in excess of such value may be made upon prior approval by CAFI, who shall determine the rate thereof.

This provision determines "not only the nature and extent" of defendant's liability "but also the nature and extent of the shipper's right of recovery." *North American Phillips*, 579 F.2d at 233. In order to have the benefit of the limitations stated in its tariff, a carrier must give the shipper a reasonable opportunity to declare a higher value by paying a higher freight rate. *First Pennsylvania Bank v. Eastern Airlines, Inc.*, 731 F.2d 1113, 1117 (3d Cir. 1984).

The general measure of damages for damaged goods is the "difference between the market value of the property in the condition in which it should have arrived at its destination and its market value at destination in its damaged condition less salvage collected." 2 S. Sorkin, *Goods in Transit* § 11.03 at 11-11 (1990). Notwithstanding this general rule, courts have recognized that each case must be decided on its own facts and that not all goods have an ascertainable market value. As the Supreme Court stated in *Illinois Cent. R. Co. v. Crail*, 281 U.S. 57, 74 L.Ed. 699 (1930):

The test of market value is at best but a convenient means of getting at the loss suffered. It may be discarded and other more accurate means resorted to if, for special reasons, it is not exact or otherwise not applicable.

*Id.* at 64-65, 74 L.Ed. at 703. In such cases some courts have accepted the invoice price at the place of shipment. *See, e.g., Union Pacific R. Co. v. Burke*, 255 U.S. 317, 65 L.Ed. 656 (1921); *Tatlow*

& *Pledger (PTY) Ltd. v. Hermann Forwarding Co.*, 456 F. Supp. 351, 355 (S.D.N.Y. 1978).

In the present case the bill of lading shows a declared value of $18,000.00. Plaintiff's evidence showed that it had paid $329.50 for excess value and that it had been billed $18,000.00 for the OTM-2400 by the manufacturer. The evidence was undisputed that the machine was not usable in its damaged condition. The only evidence of value at destination was testimony of one witness that the machine could possibly have been taken apart and the parts sold for $500.00. Where the declared value represents plaintiff's actual loss, a rule allowing a shipper to recover his price for the goods deemed destroyed "achieve[s] at least a rough justice." *Dobbs on Remedies* § 5.10, at 379 (1973). Defendant having presented no credible evidence suggesting that the parties' contractual agreement as to stipulated value should not be enforced, the trial court properly concluded that defendant was obligated to pay plaintiff the full amount of the declared value of the machine.

Defendant's remaining assignments of error relate to the admission of certain evidence at trial. Having determined that the trial court did not err in directing a verdict for plaintiff, we do not address these assignments of error.

Affirmed.

Judges JOHNSON and PHILLIPS concur.