SHAUN MARSO, Plaintiff v. UNITED PARCEL SERVICE, INC., Defendant

No. COA11-201

(Filed 20 September 2011)

**Contracts—breach—summary judgment improper—genuine issue of assent to limiting terms—actual or constructive notice—doctrine of ratification**

The trial court erred in a breach of contract case by granting summary judgment in favor of defendant, denying plaintiff's motion for summary judgment, and dismissing plaintiff's complaint with prejudice. There was a genuine issue as to whether plaintiff assented to be bound by the limiting terms of the UPS Tariff and whether defendant presented plaintiff with actual or constructive notice of the terms. Further, plaintiff's claims were not barred by the doctrine of ratification because although he admitted to endorsing the cashier's check, plaintiff provided uncontradicted sworn testimony by affidavit from a local bank employee that the check was determined to be fraudulent prior to its deposit.

Appeal by plaintiff from order entered 4 October 2010 by Judge Arnold O. Jones, II in Wayne County Superior Court. Heard in the Court of Appeals 29 August 2011.

*Dees, Smith, Powell, Jarrett, Dees & Jones, by Tommy W. Jarrett, for plaintiff-appellant.*

*Alston & Bird LLP, by Anitra Goodman Royster, for defendant-appellee.*

MARTIN, Chief Judge.

Plaintiff Shaun Marso appeals from the trial court's 4 October 2010 order denying his motion for summary judgment and granting summary judgment in favor of defendant United Parcel Service, Inc. ("defendant UPS"). We reverse summary judgment and remand for further proceedings.

According to the record before us, in November 2008, plaintiff placed an advertisement in a Goldsboro newspaper to sell a ladies diamond engagement ring. Plaintiff was contacted by a man identifying himself as Karl Thompson, who agreed to purchase the ring from plaintiff for $12,000.00. On 14 November 2008, plaintiff visited a UPS Customer Center in Goldsboro, North Carolina, to make arrangements to ship the ring to Mr. Thompson, who was located in Lafayette, Louisiana. Plaintiff averred that, "[p]rior to the time [he had visited the UPS Customer Center, plaintiff] had called the same store and verified that UPS would take cash from the purchaser and not release the ring until the person delivered the cash for the ring." Plaintiff further asserted that "the person with whom [he] dealt directly at the UPS Center assured [him] that [defendant] UPS would collect cash only and that the collection was guaranteed," and that plaintiff "would be getting a check from [defendant] UPS, not from the purchaser."

The parties do not dispute that plaintiff paid defendant UPS $145.23 to ship the ring by UPS Next Day Air Service, and that the package was shipped by C.O.D. ("Collect on Delivery") service, by which plaintiff requested that defendant collect $12,145.00 upon delivery of the package to cover the purchase price and shipping costs. The record includes a copy of the shipment receipt provided to plaintiff, which indicates that the package was shipped "COD=$12,145.00, Guaranteed."

On 17 November 2008, defendant UPS delivered the package to the addressee and collected an instrument identified as a cashier's check drawn upon Compass Bank of Houston, Texas, in the amount of $12,145.00 made payable to plaintiff. Defendant UPS delivered the instrument by regular mail to plaintiff, who then brought it to his local bank. Because the check was drawn upon an out-of-state bank, and because of the amount of the check, the bank representative from plaintiff's bank stated by affidavit that she sought to verify the validity of the instrument before accepting the check for deposit. Plaintiff avers that he was then advised by the bank representative that the instrument was "a bogus check of no value." Plaintiff reported the incident to the Goldsboro Police Department, which closed the

case after determining that "the actual crime occurred in another jurisdiction." According to a supplementary police report, the Goldsboro Police Department provided plaintiff with contact numbers for the Lafayette Police Department and advised plaintiff to file a report with that agency. The record does not indicate whether plaintiff filed a criminal complaint with the local police department in Louisiana.

On 15 September 2009, plaintiff filed a complaint in Wayne County Superior Court seeking to recover $12,145.00 from defendant UPS on the grounds that defendant UPS "agreed to collect on delivery the sum of $12,145.00," "guaranteed that collection as a matter of contract," "did not collect the sum of $12,145.00," and thus "materially breached its contractual obligation." Defendant filed its answer denying plaintiff's claims and filed a motion for summary judgment. Shortly thereafter, plaintiff filed a cross-motion for summary judgment. The trial court heard both motions and, on 4 October 2010, the court entered its order granting defendant UPS's motion for summary judgment, denying plaintiff's motion for summary judgment, and dismissing plaintiff's complaint with prejudice. Plaintiff appeals.

---

"Summary judgment is properly granted when the forecast of evidence 'reveals no genuine issue as to any material fact, and when the moving party is entitled to a judgment as a matter of law.'" *Dobson v. Harris*, 352 N.C. 77, 83, 530 S.E.2d 829, 835 (2000) (quoting *Koontz v. City of Winston-Salem*, 280 N.C. 513, 518, 186 S.E.2d 897, 901 (1972)); *see also* N.C. Gen. Stat. § 1A-1, Rule 56(c) (2009) ("[Summary judgment is proper] if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law."). "[T]he real purpose of summary judgment is to go beyond or to pierce the pleadings and determine whether there is a genuine issue of material fact." *Singleton v. Stewart*, 280 N.C. 460, 464, 186 S.E.2d 400, 403 (1972). "All facts asserted by the adverse party are taken as true, and their inferences must be viewed in the light most favorable to that party." *Dobson*, 352 N.C. at 83, 530 S.E.2d at 835 (citation omitted). "[I]n ruling on a motion for summary judgment the court does not resolve issues of fact and must deny the motion if there is any issue of genuine material fact." *Singleton*, 280 N.C. at 464, 186 S.E.2d at 403. "On appeal, an order allowing summary judgment is reviewed *de novo*." *Howerton v. Arai Helmet, Ltd.*, 358 N.C. 440, 470, 597 S.E.2d 674, 693 (2004).

Plaintiff concedes that the determination of liability for an action against defendant—an air carrier engaged in interstate commerce—is governed by federal common law. *See Butler Int'l, Inc. v. Cent. Air Freight, Inc.*, 102 N.C. App. 401, 405, 402 S.E.2d 441, 444 (1991); *see also Sam L. Majors Jewelers v. ABX, Inc.*, 117 F.3d 922, 926–27, 929 (5th Cir. 1997) ("The Supreme Court has made it clear that notwithstanding [*Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78, 82 L. Ed. 1188, 1194 (1938)], federal common law causes of action continue to exist when a federal rule of decision is necessary to protect uniquely federal interests. . . . Therefore, a federal cause of action continues to survive for freight claims against air carriers." (internal quotation marks omitted)). Although plaintiff provides some argument that defendant is liable to plaintiff for the amount of $12,145.00 under federal common law, plaintiff alternatively relies on *American Airlines, Inc. v. Wolens*, 513 U.S. 219, 130 L. Ed. 2d 715 (1995), to argue that the issue in the present case falls within an exception that plaintiff claims would permit his action to proceed under state law. *Am. Airlines, Inc.*, 513 U.S. at 224–25, 228–29, 130 L. Ed. 2d at 723, 725–26 (concluding that a breach of contract claim arising from plaintiffs' complaint that the retroactive application of modifications to the airline's AAdvantage frequent flyer program, which had the effect of devaluing credits that AAdvantage members had already earned, was not preempted by federal law because "[a] remedy confined to a contract's terms simply holds parties to their agreements—in this instance, to business judgments an airline made public about its rates and services" regarding "its own, self-imposed undertakings"). Thus, plaintiff urges this Court to conclude that he is entitled to judgment as a matter of law under both state law and federal common law.

Nevertheless, our understanding of the facts as presented by the parties' competing affidavits in support of their cross-motions for summary judgment does not comport with their respective representations that there are no genuine issues as to any material facts. In support of defendant's motion for summary judgment, the record includes an affidavit from Kenny Davis, a Security Supervisor for defendant who is familiar with defendant's "package intake procedures, including the procedures used in [defendant] UPS's Customer Centers when shipping packages such as the package that is the subject of this litigation." According to Mr. Davis, each customer who ships packages from the UPS Customer Center in Goldsboro that was visited by plaintiff "use[s] a computer program," which "allows a shipper to personally enter the information relevant to or necessary for shipment of [a] package," including the shipper's address, the recipi-

ent's address, and "a Collect On Delivery amount for the UPS driver to collect." After the shipper inputs the information in the computer program, he or she must then click a button on the computer screen which launches a pop-up screen with the heading "Terms of Service" and displays the following message:

> By clicking on "Print" and tendering your package for shipment, you agree to, for yourself and as agent for and on behalf of any other person having interest in this package, Terms of Service specified by UPS on any applicable waybill, tariff or service guide, including terms which may limit the liability of UPS. UPS Terms of Service and Tariff Information is viewable at www.ups.com or may be obtained from the counter attendant upon request.

The terms of service in the "UPS Tariff/Terms and Conditions of Service for Small Package Shipments in the United States" ("UPS Tariff") provide, in relevant part, that "UPS will not accept currency in any amount for payment of C.O.D. shipments," and that

> [a]ll checks or other negotiable instruments (including cashier's checks, official bank checks, money orders and other similar instruments) tendered in payment of C.O.D.s will be accepted by UPS *based solely upon the shipper assuming all risk relating thereto including, but not limited to, risk of non-payment, insufficient funds, and forgery, and UPS shall not be liable upon any such instrument.* . . .

(Emphasis added.) These excerpted provisions are not visible on the "Terms of Service" pop-up screen.

According to Mr. Davis's affidavit, after the "Terms of Service" pop-up screen appears before the shipper, the shipper must manifest his or her assent to these terms of service by clicking the "OK" button on the screen; the shipping process will not continue until the shipper does so. Once the shipper clicks this button, the shipping process continues and a bar code label is printed, which is then presented to the UPS counter attendant, who scans the bar code and collects payment from the shipper.

However, in plaintiff's affidavit in support of his motion for summary judgment, plaintiff "categorically den[ies]" that he used a computer "in any way, shape, or form" when he visited the UPS Customer Center in Goldsboro. Instead, plaintiff asserts that defendant's employee entered the information into the computer, and that "[n]o one advised [plaintiff], orally or in writing, about any UPS Tariff, way-

bill, or service guide," or advised him that he could request a copy of the same. Plaintiff asserts that defendant's employee at the UPS Customer Center "assured [him] that UPS would collect cash from the purchaser," that "the collection was guaranteed," and that plaintiff "would be getting a check from UPS, not from the purchaser." In other words, plaintiff suggests by his argument that he did not assent to the terms of service identified in the UPS Tariff, which would limit defendant's liability for the fraudulent cashier's check collected by defendant upon delivery of plaintiff's package to Mr. Thompson, and instead asserts that he formed an oral contract with defendant's employee which obligated defendant to be liable to plaintiff for $12,145.00 without limitation. Thus, there appears to be a genuine issue as to whether plaintiff assented to be bound by the limiting terms of the UPS Tariff, and whether defendant presented plaintiff with actual or constructive notice of the terms set forth by the UPS Tariff.

Therefore, we conclude the trial court could not properly grant summary judgment in favor of defendant under either federal or state law, since there is a genuine issue as to a material fact in this case, *see Singleton*, 280 N.C. at 464, 186 S.E.2d at 403. Here, the parties presented conflicting evidence in competing affidavits regarding the attendant circumstances of the formation and terms of the agreed-upon contract, including whether plaintiff had either actual or constructive notice that he would be bound by the terms of the UPS Tariff. These facts and circumstances are determinative of the issue, notwithstanding whether plaintiff's claim is controlled by federal common law or by state law. *See, e.g., E.J. Rogers, Inc. v. United Parcel Serv., Inc.*, 338 F. Supp. 2d 935, 939–41 (S.D. Ind. 2004) (holding that, while an airbill or receipt "can incorporate by reference outside materials limiting liability," a shipper was *not limited* by the terms of a tariff when there was no reference to that tariff in any documentation provided to the shipper, since a shipper is not "presumed to know every single detail included in a carrier's tariff on file with the Interstate Commerce Commission," and "the mere existence of a tariff, without more, is not sufficient to limit or avoid liability"); *Sam L. Majors Jewelers*, 117 F.3d at 930–31 (holding that a shipper's liability *was limited* by the provisions included on an airbill, and that "[t]he carrier need not demonstrate that the customer had actual knowledge of the liability limitations," when the court determined that "the liability limiting provisions were sufficiently plain and conspicuous to give reasonable notice of their meaning . . . [based on its analysis of] the physical characteristics of the airbill . . . to determine

whether they provide reasonable notice to the customer [and] . . . the conditions under which the shipment was made"); *Anthony v. Am. Express Co.*, 188 N.C. 407, 409–10, 124 S.E. 753, 754–55 (1924) ("There is a distinction, uniformly recognized by the courts, between the liability of defendant, as a common carrier, with respect to the shipment of the goods received by it, and its liability under its special contract to collect from the consignee upon delivery the value of the goods as specified in the receipts, and to remit the money thus collected to consignor. . . . [Accordingly,] such obligation [to act as the collecting agent of the shipper] arises only by contract, express or implied, and . . . [the carrier] is bound to a strict compliance with its undertaking." (internal quotation marks omitted)). Accordingly, we reverse the trial court's order granting defendant's motion for summary judgment, denying plaintiff's motion for the same, and dismissing plaintiff's complaint with prejudice, and we remand this matter for further proceedings.

Because there is a genuine issue as to whether the parties contracted to limit defendant's liability pursuant to the terms of service set forth in the UPS Tariff, we decline to address defendant UPS's cross-issues on appeal which presume that plaintiff was bound by these terms. We further find unpersuasive defendant UPS's footnote suggesting that the trial court properly granted summary judgment in its favor because plaintiff's claims are "barred pursuant to the doctrine of ratification." Although plaintiff admits that he endorsed the cashier's check, taking the undisputed facts in the light most favorable to plaintiff, plaintiff provided uncontradicted, sworn testimony by affidavit from an employee at his local bank stating that the employee determined the cashier's check to be fraudulent "prior to accepting it for deposit," and that she "returned the original of the [cashier's] check to [plaintiff] without making a deposit of it for him." However, unlike the present case, the cases upon which defendant UPS relies in the footnote to its brief describe instances in which the shippers *actually deposited* instruments collected upon the delivery of packages which were non-conforming on their face in either amount or form in express contravention of the contract terms to which the parties agreed to be bound. We conclude these cases are not sufficiently analogous to the present case to provide relevant legal authority for defendant UPS's assertion that the trial court could have properly granted summary judgment in its favor on this basis.

Reversed and remanded.

Judges BRYANT and CALABRIA concur.